UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

**2021 SEP 30  PM 3: 44**

CLERK

BY _____
DEPUTY CLERK

UNITED STATES OF AMERICA )
)
v. )                        Case No. 2:19-cr-00080
)
JAMES FELIX and )
JOHNNY FORD, )
)
Defendants. )

## OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND DEFENDANT FORD'S MOTION TO SUPPRESS
(Docs. 187, 190, & 191)

Pending before the court are motions to dismiss Counts I and II[1] of the Third

Superseding Indictment for failure to specify the quantities of cocaine base attributable to

each individual defendant filed by Defendants James Felix and Johnny Ford. (Docs. 187

& 190.) Defendant Ford separately moves to suppress evidence obtained as a result of his

allegedly unlawful arrest. (Doc. 191.) On August 12, 2021, the government filed a motion

to strike language from the Third Superseding Indictment related to the quantities of

cocaine base, which the court granted. (Docs. 196 & 199.) As a result, the government

contends that Defendants Felix's and Ford's motions to dismiss are now moot. (Doc.

198.) Defendants Felix and Ford do not oppose the government's motion to strike but

have not conceded that their motions to dismiss are moot.

Defendants Felix and Ford are charged with: knowingly and willfully conspiring

to distribute cocaine base between in or about late 2018 and April 17, 2019, in violation

of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C) (Count I); knowingly and intentionally

possessing with intent to distribute cocaine base on or about April 16, 2019, in violation

of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II); and knowingly and willfully

---

[1] Defendant Ford's motion requests dismissal of Counts I and III. This appears to be a
typographical error because he refers to Count II elsewhere in his motion and incorporates by
reference Defendant Felix's motion, which requests dismissal of Counts I and II.

conspiring to use a firearm during and in relation to, and to possess a firearm in furtherance of, a drug trafficking crime between in or about February 2019 and April 16, 2019, in violation of 18 U.S.C. § 924(c) (Count III).

Defendant Felix is charged with on or about April 16, 2019, knowingly possessing a firearm; that is, a .22 caliber Walther P22 pistol, while knowingly having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count IV).

Defendant Ford is charged with on or about April 16, 2019, knowingly possessing a firearm; that is, a 9mm caliber Ruger SR9C pistol, while knowingly having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count V).

Defendants Felix and Ford are charged with knowingly using a firearm in furtherance of a drug trafficking crime for which they may be prosecuted in a court of the United States on or about April 16, 2019, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count VI).

The government is represented by Assistant United States Attorneys Nathanael T. Burris and Paul J. Van de Graaf. Defendant Felix is represented by David C. Sleigh, Esq., and Defendant Ford is represented by Robert W. Katims, Esq.

## I.    Factual Background.

### A. The Dalla Mura Affidavit

On April 17, 2019, Burlington Police Department ("BPD") Detective Corporal Eric Dalla Mura signed and swore to an affidavit of probable cause (the "Dalla Mura Affidavit"), in which he asserts "he has probable cause to believe that Johnny Cornelius Ford has committed the crime of [m]urder in the second degree [in] violation of 13 [V.S.A. §] 2303[,]" by the following means:

> Johnny Cornelius Ford committed the crime of [h]omicide at 235 North Willard St in Burlington, VT on 4/16/2019 at approximately 1433 hours, when he fired gunshots at victim Benzel Daravious Hampton which resulted in his death. Johnny Cornelius Ford was a participant in the crime along with James Trevon Felix, Lesine C. Woodson, and Brandon Sanders.

2

(Doc. 191-1 at 4 (emphasis omitted)).

According to the Dalla Mura Affidavit, Jonette Somers witnessed an attack against Mr. Hampton in her driveway by "two unknown black males[.]" *Id.* at 5, ¶ 3(b). Ms. Somers stated that the first assailant, wearing a blue coat, was on top of Mr. Hampton as he lay on the ground when the second assailant, who was wearing a tan coat, "whipped out his gun and started shooting." *Id.* at 5, ¶ 3(c) (internal quotation marks omitted).

Chelsey Russell, who witnessed the shooting from a car parked in Ms. Somers's driveway, told Detective Dalla Mura that she saw a man she recognized as Brandon Sanders "slamming into [Mr. Hampton] and knocking him to the ground." *Id.* at 5, ¶ 5. While Mr. Hampton was on the ground, Ms. Russell said a male she did not recognize, who was wearing a tan coat and had "dreads in his hair, about half of which [were] dyed blond[,]" began shooting at Mr. Hampton. *Id.* at 6, ¶ 8. Shortly thereafter, Mr. Sanders started shooting at Mr. Hampton as well. After the shooting of Mr. Hampton, the assailant in the tan coat pointed a gun at Ms. Russell, causing her to flee the scene. As she left, she saw Mr. Sanders and the other assailant limping across the street.

Detective Dalla Mura reviewed a cell phone video taken by Stuart Paton from his home across the street from the shooting. Mr. Paton started filming after he heard gunshots. The video depicts a person in a black jacket; a person in a tan or gold jacket who appears to be carrying a gun; and a third person who is being helped by the other two individuals as he limps across the street toward a black Nissan Pathfinder. All three then attempt to access the back of the Pathfinder. In the audio accompanying the video, Mr. Paton identified the Pathfinder's license plate number as HAS463.

The Dalla Mura Affidavit recites that an anonymous witness known to BPD heard gunshots and saw "three black males wearing hooded jackets[,]" one of whom was being "carried" by the others, "crossing the street toward where the black Pathfinder was seen in the video." *Id.* at 8, ¶ 18.

The black Nissan Pathfinder with Vermont license plate HAS463 was registered to Mandy Bushey. Ms. Bushey told law enforcement in a sworn statement that earlier on the

day of the shooting, two men approached her in the area of 166 North Street[2] in Burlington and asked to borrow her Pathfinder later that day. She recognized the two men from their association with a Florida group from which she had previously purchased illegal drugs. One of these men she knew as "Sonny." A few hours after their initial interaction, "Sonny" and a different man, whom Ms. Bushey knew as "Mike," returned to the area of 166 North Street, took the Pathfinder, dropped off Ms. Bushey and another individual in Winooski, and then left Winooski with "Mike" driving and "Sonny" in the rear passenger seat. According to Ms. Bushey, "Sonny" is "a black male, estimated to be 35 years old, tattoos on his arms, and long dreads that were black with blond[] coloring mixed in." (Doc. 191-1 at 9, ¶ 24.) She described "Sonny" as "looking like Bob Marley and having 'perfect teeth.'" *Id.* At the time they borrowed her Pathfinder, Ms. Bushey said "Sonny" wore "a gold colored jacket with fur around the hood" and "Mike" wore "a black colored jacket with fur around the hood[.]" *Id.* at 9, ¶ 26.

Upon being shown a photograph of Defendant Ford, Ms. Bushey stated she was "100% sure" the person in the photograph was the man she knows as "Sonny." *Id.* at 10, ¶ 34. Based on a photograph of Mr. Sanders, Ms. Bushey said she was "100%" confident Mr. Sanders was the man who accompanied "Sonny." *Id.* at 9, ¶ 25. Ms. Bushey also identified "Mike" as Defendant Felix from a photograph.

Video from the area of 166 North Street at the time indicated by Ms. Bushey as the approximate time at which "Sonny" and "Mike" picked up the Pathfinder shows a male with "lighter colored dreads[,]" who matches the description of Defendant Ford. *Id.* at 10-11, ¶ 35. Photographs of Defendant Ford reviewed by BPD, including a mugshot, "showed him to have colored dreads in his hair." (Doc. 191-1 at 10, ¶ 34.)

On April 17, 2019, BPD searched the Pathfinder pursuant to a search warrant and found an airline ticket for a flight from Orlando, Florida to Burlington issued to Defendant Felix dated April 6, 2019 as well as a receipt from a Burlington Hannaford's

---

[2] The first reference to this area in the Dalla Mura Affidavit is "166 North Ave," but both subsequent references to the same area are to North Street. (Doc. 191-1 at 8-10, ¶¶ 22, 23, 35.)

grocery store dated April 15, 2019. Video from Burlington International Airport shows Defendant Felix "wearing a large coat that looks the same as the one in the video recorded by the witness on North Willard St[reet]." *Id.* at 10, ¶ 28. Video from the Hannaford's grocery store from the time and date on the receipt shows Defendant Felix, "wearing the large coat" as he and Mr. Sanders made a purchase together. *Id.* at 10, ¶ 30.

Takisha Thomas, who law enforcement identified as traveling to Enfield, Connecticut in a van with Defendant Ford after the shooting of Mr. Hampton, spoke to local law enforcement in Connecticut and described a tan coat that Defendant Ford possessed. Ms. Thomas reported that Defendant Ford is known by the nicknames "Braids" and "Sonny."

### B. State Court Proceedings

The Dalla Mura Affidavit was submitted to the Vermont Superior Court, Chittenden Unit (the "Vermont Superior Court") on April 17, 2019 to support the following charge:

> Johnny Cornelius Ford, in the County of Chittenden, at Burlington on or about April 16, 2019, aided individuals who committed second degree murder by assaulting and shooting Benzel Hampton, killing him, to wit: by acting as a lookout while others shot at Benzel Hampton and pushed him to the ground, in violation of 13 V.S.A. [§§] 2301 & 3.

*Id.* at 3. That same day, the Vermont Superior Court issued an arrest warrant for Defendant Ford after finding probable cause that Defendant Ford committed the offense of aiding murder in the second degree.

At the time of the arrest warrant's issuance, law enforcement had traced Defendant Ford to a Motel 6 in Enfield, Connecticut. The Superior Court of Connecticut issued a search and seizure warrant for room number 159 at the Motel 6, identifying Defendant Ford as a person to be found within the room. The application for the search and seizure warrant listed "Fugitive from Justice, CGS 54-170" as the offense for which evidence would be found "or that a particular person participated in the commission of[.]" (Doc. 197-2 at 1.) The attached affidavit from Detectives Gary Castle and Rebecca J. Leger of the Enfield Police Department states:

5

[Mr. Sanders and Defendant Ford] are the subject of active and extraditable arrest warrants, issued by the State of Vermont Superior Court, for the charge of [h]omicide. The arrest warrants were issued for Sanders['] and Ford's part in the shooting death of Benzel Hampton in Burlington[,] Vermont on 4/16/2019. Sanders and Ford were both identified by witnesses as those who both shot bullets into Hampton.

*Id.* at 2.

During the execution of the search and seizure warrant at the Motel 6, Defendant Ford was arrested and the government alleges that "more than 100 grams of cocaine base and approximately $17,000" were found in room 159. (Doc. 197 at 3.)

## II.   Conclusions of Law and Analysis.

### A.   Whether to Dismiss Counts I and II of the Third Superseding Indictment Based on a Failure to Specify Quantities of Cocaine Base Attributable to Each Defendant.

Defendants Felix and Ford argue that Counts I and II must be dismissed because they do not sufficiently set forth the specific quantity of drugs each defendant conspired to distribute, as alleged in Count I, and possessed, as alleged in Count II. They also contend that the Government "has produced no evidence that Defendant[s] possessed any amount of cocaine base . . . ." (Docs. 187 at 1 & 190 at 1.) If Counts I and II are not dismissed for violating the Fifth Amendment, Defendants Felix and Ford seek an order "requiring the government to disclose the legal instructions on Counts [I] and [II] that were given to the grand jury that returned the indictment in this case." (Doc. 187 at 6.)

At the time the Third Superseding Indictment was filed, Count I charged:

Between in or about late 2018 and April 17, 2019, in the District of Vermont and elsewhere, the defendants, JAMES FELIX, a.k.a. "Mike," JOHNNY FORD, a.k.a. "Sonny," LESINE WOODSON, a.k.a. "Lexi" and "Coco," BRANDON SANDERS, a.k.a. "Baby Boy," Angelina Pearson-Fitzpatrick, a.k.a. "Auntie," Devlin Koski, and others, known and unknown to the grand jury, knowingly and willfully conspired to distribute cocaine base, a Schedule II controlled substance.

With respect to defendants FELIX, FORD, WOODSON, and SANDERS, their conduct as members of the conspiracy, including the reasonably foreseeable conduct of other members of the conspiracy, involved 28 grams or more of a mixture and substance containing a detectable amount of

cocaine base. (21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B), 841(b)(1)(C))

(Doc. 125 at 1.) Count II charged:

> On or about April 16, 2019, in the District of Vermont and elsewhere, the defendants, JAMES FELIX, a.k.a. "Mike," JOHNNY FORD, a.k.a. "Sonny," LESINE WOODSON, a.k.a. "Lexi" and "Coco," and BRANDON SANDERS, a.k.a. "Baby Boy," knowingly and intentionally possessed with the intent to distribute 28 grams or more of a mixture and substance containing a detectable amount of cocaine base, a Schedule II controlled substance. (21 U.S.C. §§ 841(a)(1), 841(b)(1)(B); 18 U.S.C. § 2)

*Id.* at 2.

The Fifth Amendment generally prevents prosecution "for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]" U.S. Const. amend. V. The grand jury requirement of the Fifth Amendment limits "indictments for higher crimes to those offenses charged by a group of one's fellow citizens acting independently of the prosecution and the court." *United States v. Hogan*, 712 F.2d 757, 759 (2d Cir. 1983) (citing *Stirone v. United States*, 361 U.S. 212, 218 (1960)).

"Elements of a crime must be charged in an indictment[.]" *United States v. O'Brien*, 560 U.S. 218, 224 (2010) (citing *Hamling v. United States*, 418 U.S. 87, 117, (1974); *Jones v. United States*, 526 U.S. 227, 232 (1999)). "Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne v. United States*, 570 U.S. 99, 102 (2013) (citation omitted).

Under the statutes allegedly violated in Counts I and II, a quantity of 28 grams or more of a mixture or substance containing a detectable amount of cocaine base carries a mandatory minimum sentence and raises the statutory maximum sentence. 21 U.S.C. §§ 841(b)(1)(B) (setting penalties for 28 grams or more), 841(b)(1)(C) (setting penalties for indeterminate quantities), 846 (providing that penalties for conspiracy are "the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy"). Thus, the quantity of drugs is an element of the offenses in Counts I

7

and II and must be set forth in the indictment. *See United States v. Gonzalez*, 420 F.3d 111, 129 (2d Cir. 2005) ("Because mandatory minimums operate in tandem with increased maximums in [21 U.S.C.] § 841(b)(1)(A) and (b)(1)(B) to create sentencing ranges that 'raise the limit of the possible federal sentence,' drug quantity must be deemed an element for all purposes relevant to the application of these increased ranges." (quoting *Shepard v. United States*, 544 U.S. 13, 24 (2005))); *United States v. Thomas*, 274 F.3d 655, 663 (2d Cir. 2001) ("[B]ecause the quantity of drugs involved in a crime may raise a defendant's sentence above the statutory maximum established in 21 U.S.C. § 841(b)(1)(C), quantity is an element of the offense charged under 21 U.S.C. § 841.") (collecting cases).

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117 (citing *Hagner v. United States*, 285 U.S. 427 (1932); *United States v. Debrow*, 346 U.S. 374 (1953)). "While detailed allegations might well have been required under common-law pleading rules, they surely are not contemplated by [Federal Rule of Criminal Procedure] 7(c)(1), which provides that an indictment 'shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007) (citation and footnote omitted). An indictment "parroting the language of a federal criminal statute" is sufficient for most crimes. *Id.* at 109.

Defendants Felix and Ford do not argue that the drug quantity element is absent from Counts I and II; instead, they contend the counts fail to specify that each of them engaged in conduct involving 28 grams or more of cocaine base. After Defendants Felix and Ford moved to dismiss Counts I and II, the government moved to strike all references to drug quantities and citations to the heightened penalty provision, 21 U.S.C. § 841(b)(1)(B), from Counts I and II. (Doc. 196.) The court granted the government's motion to strike. The Third Superseding Indictment now alleges:

Count One

8

Between in or about late 2018 and April 17, 2019, in the District of
Vermont and elsewhere, the defendants, JAMES FELIX, a.k.a. "Mike,"
JOHNNY FORD, a.k.a. "Sonny," LESINE WOODSON, a.k.a. "Lexi" and
"Coco," BRANDON SANDERS, a.k.a. "Baby Boy," Angelina Pearson-
Fitzpatrick, a.k.a. "Auntie," Devlin Koski, and others, known and unknown
to the grand jury, knowingly and willfully conspired to distribute cocaine
base, a Schedule II controlled substance. (21 U.S.C. §§ 846, 841(a)(1),
841(b)(1)(C))

Count Two

On or about April 16, 2019, in the District of Vermont and elsewhere, the
defendants, JAMES FELIX, a.k.a. "Mike," JOHNNY FORD, a.k.a.
"Sonny," LESINE WOODSON, a.k.a. "Lexi" and "Coco," and BRANDON
SANDERS, a.k.a. "Baby Boy," knowingly and intentionally possessed with
the intent to distribute cocaine base, a Schedule II controlled substance. (21
U.S.C. §§ 841(a)(1); 18 U.S.C. § 2)

(Docs. 125 at 1-2; 196; & 199.)

Because Counts I and II no longer contain a drug quantity element, Defendants

Felix's and Ford's motions to dismiss Counts I and II (Docs. 187 & 190) pursuant to the

Fifth Amendment are DENIED AS MOOT.

### B.     Whether the Warrant Issued for Defendant Ford's Arrest Was Supported by Probable Cause.

Defendant Ford moves to suppress any evidence derived from his arrest on the

grounds that the April 17, 2019 arrest warrant issued by the Vermont Superior Court was

not supported by probable cause. The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and
effects, against unreasonable searches and seizures, shall not be violated,
and no Warrants shall issue, but upon probable cause, supported by Oath or
affirmation, and particularly describing the place to be searched, and the
persons or things to be seized.

U.S. Const. amend. IV.

The government contends that (1) a warrant was not required to arrest Defendant

Ford because law enforcement had probable cause to believe he had committed a felony;

(2) the issuance of an arrest warrant for aiding second-degree murder rather than

committing second-degree murder as a principal is a technical error that does not affect

the validity of the warrant; and (3) suppression of evidence is not an appropriate remedy because law enforcement relied on the arrest warrant in good faith.

An arrest warrant may be issued if "probable cause exists to believe that the subject of the warrant has committed an offense[.]" *Steagald v. United States*, 451 U.S. 204, 213 (1981). "A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (citing *United States v. Nichols*, 912 F.2d 598, 602 (2d Cir. 1990); *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983)). A warrant should be upheld if the issuing judicial officer had a "substantial basis" for finding probable cause. *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *United States v. Nersesian*, 824 F.2d 1294, 1306 (2d Cir. 1987)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232.

The elements of second-degree murder in Vermont are (1) the defendant (2) caused the death of another person (3) that was unlawful and (4) did so with an intent to kill, an intent to do great bodily harm, or a wanton disregard of the likelihood that death or great bodily harm would result. *State v. Webster*, 2017 VT 98, ¶ 37, 206 Vt. 178, 207, 179 A.3d 149, 169.

The elements of aiding the commission of a felony are (1) the defendant assisted in the commission of the felony and (2) the defendant acted with the same intent as that of the principal actor. 13 V.S.A. § 3 ("A person who aids in the commission of a felony shall be punished as a principal."); *State v. Bacon*, 658 A.2d 54, 62 (Vt. 1995) ("[We hold] that there is an implied element of intent in [13 V.S.A. § 3]."); *see also* Vt. Model Crim. Jury Instructions Comm., *Aiding in the Commission of a Felony*, Vt. Model Crim. Jury Instructions (June 14, 2012), http://www.vtjuryinstructions.org/criminal/MS09-321.htm (listing elements of the offense in model jury instructions).

"[A] person [may be convicted] as an accomplice only when the person participated in the execution of the unlawful act under a common understanding or purpose, which is equivalent to requiring the requisite mental state." *Bacon*, 658 A.2d at

62; *see also* Vt. Model Crim. Jury Instructions Comm., *supra* ("If two persons join together to form a common plan, and if they both are present at the scene for the agreed-upon purpose of committing the offense, then each person may be criminally responsible for the acts of the others in the performance of the plan.").

The Dalla Mura Affidavit, which supported the arrest warrant, asserts that Mr. Hampton was shot and killed during an attack by Defendant Ford, who was identified by eyewitnesses by his race, gender, clothing, hair color, and hairstyle. Two eyewitnesses describe Defendant Ford firing a gun at Mr. Hampton as part of a coordinated attack that began with another assailant pushing Mr. Hampton to the ground. One witness describes Defendant Ford pointing a gun at her after the shooting. Video evidence places Defendant Ford at the scene of the crime holding a gun and assisting his accomplices to the getaway vehicle, identified as a black Nissan Pathfinder with Vermont license plate HAS463. The Dalla Mura Affidavit recites a sworn statement made by the Pathfinder's owner indicating Defendant Ford borrowed the vehicle used by the assailants in the hours prior to the shooting.

Viewed collectively, the factual information contained in the Dalla Mura Affidavit provided a "substantial basis" to find probable cause that Defendant Ford formed a common understanding or plan with others to attack Mr. Hampton with the intent to kill him or cause him great bodily harm, or with wanton disregard of the likelihood that death or great bodily harm would result, and that Defendant Ford did in fact assist in the attack that caused Mr. Hampton's death. The arrest warrant for Defendant Ford for aiding the commission of second-degree murder therefore did not violate the Fourth Amendment and Defendant Ford's arrest was lawful.

The government points out an apparent inconsistency in charges between the Dalla Mura Affidavit and arrest warrant but contends it is a technical error that does not invalidate the warrant. The court agrees the arrest warrant states the offense as aiding second-degree murder, consistent with the charging information, while the Dalla Mura Affidavit identifies the offense as "Murder in the second degree [in] violation of 13 [V.S.A. §] 2303." Under Vermont law, "A person who aids in the commission of a felony

11

shall be punished as a principal." 13 V.S.A. § 3. Aiding in the commission of a second-degree murder can thus accurately be described as "committ[ing] the crime of [m]urder in the second degree," or "committ[ing] the crime of [h]omicide[,]" which is the language used in the Dalla Mura Affidavit.

Assuming *arguendo* a discrepancy exists between the warrant and affidavit, it is well-established that "inaccuracies or ambiguities in a warrant do not necessarily render a warrant invalid under the Fourth Amendment." *United States v. Voustianiouk,* 685 F.3d 206, 212 (2d Cir. 2012) (citations omitted). Stated differently, the fact that an arrest warrant lists the wrong crime does not automatically make it invalid. *See United States v. Tramunti,* 513 F.2d 1087, 1115 (2d Cir.1975) ("The fact that the warrant referred to the wrong charge [jumping bail rather than a violation of federal narcotics law] does not make it invalid here."). "The true inquiry . . . is . . . whether there has been such a variance as to affect the substantial rights of the accused." *United States v. Carter,* 756 F.2d 310, 313 (3d Cir. 1985) (alterations in original) (internal quotation marks and citations omitted) (upholding arrest warrant that listed incorrect date of crime). The court agrees with the government that the "substantial rights" of Defendant Ford were not affected by any difference between the crime at issue in the arrest warrant and Dalla Mura Affidavit. Defendant Ford does not contend otherwise.

Because Defendant Ford was lawfully arrested pursuant to an arrest warrant supported by probable cause, there is no need to address the government's further arguments that no warrant was required or that suppression of the evidence under the exclusionary rule is inappropriate because law enforcement relied on the arrest warrant in good faith.

## CONCLUSION

For the foregoing reasons, Defendants Felix's and Ford's motions to dismiss Counts I and II (Docs. 187 & 189) are DENIED AS MOOT and Defendant Ford's motion to suppress (Doc. 191) is DENIED.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 30th day of September, 2021.

Christina Reiss, District Judge
United States District Court